**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTOPHER L. BUIE**, <br><br> Plaintiff, <br><br> v. <br><br> **THE UNITED STATES OF AMERICA**, <br><br> Defendant. | Case No. 22-cv-3501 (CRC) |

**MEMORANDUM OPINION**

In 2013, Plaintiff Christopher L. Buie was discharged from his job as a route driver for a delivery company in Omaha, Nebraska. Claiming his termination was unlawful retaliation for refusing to speed to complete his route on time, Buie filed a complaint with the Occupational Safety and Health Administration ("OSHA"). After OSHA sided with his employer, Buie unsuccessfully challenged the decision before a Department of Labor Administrative Law Judge ("ALJ") and then appealed the ALJ's ruling to the Administrative Review Board (the "Board"), which affirmed the dismissal. Having reached the end of the road in his administrative challenge, Buie filed this *pro se* action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, alleging that the Secretary of Labor negligently hired and supervised the Department's ALJs and Board members—who, from his vantage, conspired against him and other whistleblowers.

The United States moves to dismiss the action on the grounds that sovereign immunity shields it from suit and, alternatively, that the amended complaint fails to state a claim upon which relief can be granted. Finding that none of the claims fall within the FTCA's limited waiver of sovereign immunity, the Court will grant the government's motion and dismiss the case.

I. **Background**

The Court draws the following background from Buie's amended complaint. The United States no doubt contests many of his allegations.

In 1982, Congress enacted the Surface Transportation Assistance Act, Pub. L. No. 95-599, 92 Stat. 2689 (1978) ("STAA"). Included among the STAA's "employee protections" are provisions prohibiting covered employers from taking adverse actions against an employee for "refus[ing] to operate a vehicle" either (1) because "the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security," 49 U.S.C. § 31105(a)(1)(B)(i), or (2) because "the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition," id. § 31105(a)(1)(B)(ii).

A worker who believes his employer has violated these anti-retaliation provisions can file a complaint with OSHA within 180 days of the alleged reprisal. 49 U.S.C. § 31105(b). Upon completing an investigation, OSHA releases written findings. 29 C.F.R. §§ 1978.104–105. Either the employer or employee can object to OSHA's findings and request a hearing before a Department of Labor ALJ. Id. §§ 1978.106–109. Buie alleges that the Secretary of Labor used to "fulfill[] his or her statutory duty to" review the ALJs' decisions. See Am. Compl. ¶ 17. He says that changed in 1996, however, when then-Secretary Robert Reich delegated that responsibility to the Administrative Review Board without reserving the power to review the Board's decisions. See id. ¶¶ 17–18; 61 Fed. Reg. 19,978 (May 3, 1996). Thereafter, an employer or employee could appeal the ALJ's decision to the Board, which had discretion to accept or reject the case for review. 29 C.F.R. § 1978.110. But until the Department revised its regulations in 2020, the Secretary allegedly lacked authority to review, correct, or vacate the

Board's decisions. See Secretary's Order 01-2020, Delegation of Authority and Assignment of Responsibility to the Administrative Review Board, 85 Fed. Reg. 13,186 (Mar. 6, 2020) (authorizing the Secretary to review Board decisions at his discretion). After the Board renders its decision, the aggrieved employer or employee may seek review in the appropriate U.S. Court of Appeals. 29 C.F.R. § 1978.110(b).

Buie worked for eight years as a route driver at Spee Dee Delivery Services, Inc., an Omaha, Nebraska package-delivery service, until his discharge in 2013. Buie filed a complaint with OSHA alleging that he was terminated in retaliation for refusing to speed to complete his delivery route on time and complaining about Spee Dee's purportedly unsafe scheduling practices. Am. Compl. ¶¶ 35, 38. Following an investigation, OSHA found no violation and dismissed the complaint. Id. ¶ 37. Buie challenged that decision, and his case was assigned to Labor Department ALJ Paul R. Almanza. Id. ¶¶ 38–40. ALJ Almanza denied the complaint in December 2018, finding that Buie failed to prove by a preponderance of the evidence that he was discharged for engaging in a protected activity. See Mot. Dismiss, Ex. A at 8–15 (ALJ Almanza's decision). Buie then appealed that decision to the Board, which affirmed the dismissal in October 2019. See Mot. Dismiss, Ex. B (Board decision). Having exhausted his administrative remedies, Buie challenged the dismissal in the Eighth Circuit Court of Appeals, see Am. Compl. ¶ 162, which denied his appeal, see Buie v. Admin. Rev. Bd., 823 F. App'x. 450, 450 (8th Cir. 2020) (per curiam) ("After careful review, we conclude that the [Board's] decision was not arbitrary, capricious, an abuse of discretion, contrary to the law, or unsupported by substantial evidence in the record."). In March 2021, the Supreme Court denied his petition for a writ of certiorari. Am. Compl. ¶ 167. The following month, Buie allegedly petitioned the

Secretary of Labor to set aside the decision in his case but did not receive a response. Id. ¶¶ 171–73.

Over a year later, Buie filed suit in this Court against the United States under the FTCA claiming that the Secretary failed to discharge his duties in an appropriate manner when hiring, retaining, and supervising the Department's ALJs and the Board. His amended complaint contains two causes of action under D.C. tort law. See id. ¶¶ 174–86.

The first cause of action is for "Negligent Supervision." See id. ¶¶ 174–79. Under this banner, Buie claims that the STAA tasks the Secretary of Labor "with enforcing and interpreting the Act's provisions" and that this general duty includes some obligation to review agency decisions in STAA cases "to ensure that (1) the final decision was the product of fair and honest proceedings and that (2) his subordinates had interpreted and applied the STAA's provisions in accordance with Congress's intent." Id. ¶¶ 8, 176. Alternatively, he contends that the Secretary owes a more basic duty "to exercise reasonable care in monitoring the work of his subordinates." Id. ¶ 176. The Secretary breached that duty, Buie argues, when "he abandoned his responsibility" by delegating the review of ALJ decisions to the Board in 1996 "without providing for his oversight" even though it was "reasonably foreseeable that subordinates would either misinterpret or misapply the STAA provisions, whether intentionally or not, and wrongly deprive whistleblowers of protection." Id. ¶¶ 177–78. Buie maintains that he was injured as a "direct result of the Secretary's breach of duty" because, freed of supervision, ALJ Almanza and other Department officials engaged in a widespread "conspiracy" with Spee Dee to suppress his claim. Id. at ¶ 178. As part of this supposed conspiracy to silence whistleblowers, Buie alleges that ALJ Almanza misrepresented the law, doctored transcripts, and distorted the facts in his case. See id. ¶¶ 38–143.

In his second cause of action for "Negligent Hiring and[/]or Retention," Buie alleges the Secretary failed "to exercise reasonable care in selecting suitable and fit persons to serve as ALJs and Board members." Id. ¶ 182. He asserts that the Secretary "knew or should have known" that ALJ Almanza "posed a risk of harm to whistleblower claimants" because he had refused a request to recuse himself from a prior case involving Wikileaks due to his past service in the Department of Justice and proceeded to exhibit "bias" by "granting the government the 20 witnesses it requested while allowing just 2 of the 38 witnesses requested by the defense" in that case. Id. ¶¶ 27, 178. Buie contends that the Secretary overlooked these supposed red flags when he blindly ratified Almanza's appointment in the wake of Lucia v. SEC, 138 S. Ct. 2044 (2018), which held that ALJs are inferior officers subject to the Appointments Clause. See Am. Compl. ¶¶ 124–26; Opp'n at 4–5. As for the Board, Buie broadly alleges that the Secretary should have known that three of its members "posed a risk of harm to whistleblower claimants on appeal" due to "their affiliation with the Federalist Society." Am. Compl. ¶ 184; see also id. ¶¶ 146–47, 155.

The government now moves to dismiss Buie's amended complaint in its entirety for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), contending that the FTCA's waiver of sovereign immunity does not apply. Alternatively, even if jurisdiction were proper, the government contends dismissal is warranted under Rule 12(b)(6) because the doctrine of *res judicata* bars this action and, regardless, Buie failed to plausibly allege the elements of a negligence claim under D.C. law.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defs. of Wildlife, 504 U.S. 555,

561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation marks omitted).  The Court also may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction. See Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

Because the Court will begin and end its analysis with the threshold question of sovereign immunity, it need not recite the standards governing Rule 12(b)(6).

### III. Analysis

The federal government's sovereign immunity is "jurisdictional in nature," and a plaintiff "bears the burden of proving that the government has unequivocally waived its immunity." Tri-State Hosp. Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003).  Buie has attempted to meet this burden through the FTCA, but his claims fall outside that statute's limited waiver and thus beyond this Court's reach.

The FTCA waives the federal government's sovereign immunity over claims for money damages that are "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  "This statutory text does not create a cause of action against the United States; it allows the United States to be liable if a private party would be liable under similar circumstances in the relevant jurisdiction." Tri-State Hospital Supply Corp., 341 F.3d at 575.  The Court therefore must "look

to the law of the local jurisdiction—in this case, the District of Columbia—to determine whether there is a local-private-party analog to [Buie's] claim." Id.

Even when these conditions are met, however, the FTCA claws back immunity through several statutory exceptions. See 28 U.S.C. § 2680. One such carveout to the FTCA's immunity waiver is the "discretionary-function" exception, which shields the United States from liability for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. § 2680(a). "The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Gaubert, 499 U.S. 315, 323 (1991) (cleaned up).

To determine whether the discretionary-function exception bars a negligence claim against the United States, courts engage in a two-step inquiry. The first question is whether the challenged decision "involves an element of judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536 (1988). This aspect of discretion is necessarily lacking if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" because "the employee has no rightful option but to adhere to the directive." Id. at 506. If the conduct does involve some element of judgment or choice, the second question is whether the decision "is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322–23. In other words, the decisions or actions must be "within the range of choice accorded by federal policy and law" and be the "results of policy determinations." Berkovitz, 486 U.S. at 538. By definition, decisions that violate an official's legal duties "cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." Loumiet v.

7

United States, 828 F.3d 935, 942 (D.C. Cir. 2016) (quoting Gaubert, 499 U.S. at 325 n.7).  The exception thus "insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment, but an employee of the government acting beyond his authority is not exercising the sort of discretion the discretionary function exception was enacted to protect."  Id. (cleaned up).

Applied here, the discretionary-function exception precludes the Court from considering broad swaths of Buie's allegations concerning the Secretary's personnel decisions and practices.  As the D.C. Circuit explained in Burkhart v. Washington Metropolitan Area Transit Authority, "decisions concerning the hiring, training, and supervising of . . . employees are discretionary in nature, and thus immune from judicial review."  112 F.3d 1207, 1217 (D.C. Cir. 1997).  Such decisions, the Circuit reasoned, are riddled with policy judgments.  "The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity, experience and employer intuition."  Id. (quotation marks omitted).  "Similarly, supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety."  Id.  In both instances, the Circuit held that the discretionary-function exception shields federal officials' policy judgments from judicial second-guessing.  Id.  Courts within this District have heeded this directive and consistently held that "government hiring and employee supervision decisions . . . involve the exercise of political, social, or economic judgment" and therefore fall within "the scope of the United States' sovereign immunity."  Smith v. United States, 157 F. Supp. 3d 32, 42 (D.D.C. 2016) (cleaned up); see also, e.g., Hamilton v. United States, Civ. A. No. 19-1105 (RDM), 2021 WL 2809124, at *5 (D.D.C. July 6, 2021) ("Clear D.C. Circuit precedent establishes that hiring, training, and supervision choices are susceptible to

8

policy judgment." (cleaned up)).  Following suit, the Court finds that it lacks jurisdiction to consider many of Buie's allegations—including the entirety of his second cause of action challenging the Secretary's selection and retention of specific ALJs and Board members.

Yet, the discretionary-function exception has limits.  As noted above, officials lack discretion to act unlawfully, so the exception does not apply to any decision that is proscribed by law because federal officials do not have discretion to violate their statutory duties.  See Loumiet, 828 F.3d at 942.  This principle applies equally to decisions exceeding constitutional bounds.  See id. at 933 ("We hold that the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription.").  Thus, if applicable law—including the supreme law of the land—forbids a government official from making a particular decision when supervising her underlings, the discretionary-function exception is no barrier to an FTCA suit.  See Burkhart, 112 F.3d at 1217 (noting that no law or policy constrained WMATA's personnel decisions in that case).

Buie contends that some of his claims fall within this limit and, as a result, land outside the discretionary-function exception's ambit.  Specifically, he maintains that the Secretary's decision to delegate the adjudication of STAA cases without retaining the power to review the Board's decisions cannot constitute a valid exercise of discretion because such total abdication violates applicable law—namely, the Constitution's Appointments Clause.  See Const. Art. 2, § 2, cl. 2.  The argument goes that "inherent in the Appointments Clause is the Secretary's responsibility to supervise the work performed by his inferiors," and "a total abdication of that responsibility is not a decision based on considerations of public policy."  Opp'n at 13; see also Sur-Reply at 2 (identifying the Appointments Clause as the source of law mandating how the

9

Secretary should structure agency review of STAA cases).[1]  Because the Appointments Clause precludes the Secretary from handing off final adjudicative authority to the Board, Buie contends, his first cause of action challenging the Secretary's "negligent supervision" of STAA cases is not barred by the discretionary-function exception.

That may be true, as far as it goes.[2]  But before showing that a claim does not fall within any statutory exception, a plaintiff seeking to establish a waiver of sovereign immunity under the FTCA must pass the first inquiry: whether the claim satisfies all the elements for an FTCA claim specified in 28 U.S.C. § 1346(b), including the requirement that it have a private analog such that "a private party would be liable under similar circumstances in the relevant jurisdiction." Tri-State Hospital Supply Corp., 341 F.3d at 575.  It is at this initial step where Buie's remaining challenge to the Secretary's supervision of the Board stumbles.

Pointing out that an official violated some constitutional provision is not enough to sue the United States for damages because the FTCA does not confer a cause of action.  It merely provides a method for enforcing state tort law against the federal government.  As a result, a "plaintiff who identifies constitutional defects in the conduct underlying her FTCA tort claim . . . may affect the availability of the discretionary-function defense, but she does not thereby convert an FTCA claim into a constitutional damages claim against the government;

---

[1] Portions of the amended complaint suggest that the limitation on delegating final adjudicative power to the Board is based in the STAA itself.  See Am. Compl. § 176.  But whether the prohibition is based in statute or found in the Constitution is immaterial because, as discussed below, the salient point is that the FTCA does not permit damage actions for alleged violations of federal law.  See Art Metal-U.S.A., Inc. v. United States, 753 F.2d 1151, 1157 (D.C. Cir. 1985) ("[It is a] well-established principle that the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA.").

[2] The government does not contest this point, so the Court will assume for present purposes that either the Constitution or the STAA restricts the Secretary's discretion in delegating final adjudicative power to the Board.

state law is necessarily still the source of the substantive standard of FTCA liability." Loumiet, 828 F.3d at 945–46. Here, it is hard to fathom how the Secretary of Labor's alleged failure to comply with the Appointments Clause when delegating authority to the Board violates D.C. tort law.

Buie attempts to shoehorn this claim into the familiar mold of "negligent supervision," but the shoe doesn't fit. "The elements of a negligent supervision claim in the District of Columbia are that (1) the employee behaved in a dangerous or otherwise incompetent manner, (2) the employer knew or should have known of its employee's dangerous or incompetent behavior and (3) the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." Leach v. Nat'l R.R. Passenger Corp., 128 F. Supp. 3d 146, 156 (D.D.C. 2015) (quotation marks omitted). A challenge to the Secretary's supposed unlawful delegation of adjudicative power to an administrative board does not match this framework. For starters, Buie does not allege the Secretary knew or should have known of the Board members' "dangerous or incompetent behavior." He merely contends that it should have been foreseeable from past experience and common sense that lower officials may misinterpret or misapply the law and may be deterred from going "rogue" with an additional layer of oversight. See Am. Compl. ¶ 178. But that charge does not measure up to the applicable standard that a plaintiff would have to meet to bring a negligent-supervision claim against a private citizen in D.C. Moreover, it is unclear how exactly the Secretary "failed to adequately supervise" officials when creating a tiered system of review through which OSHA findings are reviewed by ALJs, whose decisions are reviewed by the Board, which, in turn, can be appealed to a panel of federal judges. This four-layered review is a far cry from the neglect that could give rise to liability under local tort law. After all, nothing in D.C. law prohibits delegation or requires that the individual at the

helm of an organization involve himself personally in decision-making processes to avoid liability. Buie instead grabs that requirement from the Appointments Clause (or perhaps from the STAA itself). But this resort to federal law proves the problem with his claim: The FTCA does not render the federal government liable for constitutional or statutory violations. See FDIC v. Meyer, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims.")

Perhaps sensing the misfit between his claim and the D.C. test for negligent supervision, Buie notes that the D.C. courts have cited favorably to the Second Restatement of Agency, which imposes a general duty upon a "person conducting an activity through servants or other agents" to "make proper regulations" and "guard against the human traits of his employees which unless regulated are likely to harm others." Murphy v. Army Distaff Foundation, Inc., 458 A.2d 61, 64 (D.C. 1983) (quoting Restatement (Second) of Agency § 213 (1957)). These citations to the Restatement do not move the needle. For one thing, District of Columbia courts have clarified that a plaintiff must prove a violation of this general duty via the three-part test discussed above, see Giles v. Shell Oil Corp., 487 A.2d 610, 613 (D.C. 1985), and Buie's allegations do not measure up. But even if the Restatement did impose an independent duty, it is not apparent why the four-tiered system of supervision, culminating in review by a U.S. Court of Appeals, would not pass muster. Finally, and most fundamentally, federal courts have repeatedly rebuffed attempts by plaintiffs to latch onto a generic duty in order to "re-label a violation of a federal statute as a common law claim." Hornbeck Offshore Transp., LLC v. United States, 569 F.3d 506, 509 (D.C. Cir. 2009). Rejecting such repackaging, the D.C. Circuit emphasized that "it is virtually axiomatic that the FTCA does not apply where the claimed negligence arises out of the

12

failure of the United States to carry out a federal statutory duty in the conduct of its own affairs." Id. at 509 (cleaned up).  That axiom holds true here.

Because the challenged decisions either fall within the discretionary-function exception or rest on alleged violations of federal law without a local-law analog that could support liability of a private party for similar actions, the FTCA's waiver of sovereign immunity does not apply here.  Absent this waiver, sovereign-immunity shields the federal government from suit.  The Court therefore must dismiss all claims without prejudice for lack of subject matter jurisdiction.  N. Am. Butterfly Ass'n v. Wolf, 977 F.3d 1244, 1253 (D.C. Cir. 2020) ("[A] dismissal for want of subject-matter jurisdiction can only be without prejudice[.]").

### IV. Conclusion

For the foregoing reasons, the motion to dismiss is granted.  A separate Order will follow.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: February 9, 2024